Henry J. Suttone for Appellant Katakis. May it please the Court, this case is about suggestive trademarks and whether the trademark tooth candy is suggestive for food cart, food stall services that are envisioned and intend to use trademark. The standard for suggestive trademarks are that they require imagination on the consumer's part to call a direct message from the mark about the quality ingredients or characteristics of the service. And I would stress call a direct message from that. Suggestive trademarks will inevitably lead the consumer to the meaning of the mark. So that would be our primary point here. The USPTO considers the mark descriptive and they've cited a lot of cases where the marks were ultimate bike rack, handkerchief of the year, those kinds of things that we would argue are definitely descriptive because they convey a real or unequivocal idea of the trademark. Abercrombie says it's forthwith conveys the idea here. Can I ask you just about one, I guess, scenario that I'm thinking about and I'd like you to address it. My recollection is that both in the board's opinion and in the briefs, there are numerous instances in which at least reviewers have used the term meat candy as a term of praise. Suppose some of the establishments that were praised started using that in their advertising, saying meat candy. And it becomes widespread as a borrowing from reviewers. I'm worried about the idea that those establishments couldn't quote a review without generating a trademark suit from somebody who owns meat candy. I think fair use would protect them. The mark is suggestive, so we are on the borderline between descriptive and suggestive. If we say this mark is descriptive, we're going to say a lot of marks are suggestive. I mean, if we say it's descriptive, we're going to end up saying a lot of marks are descriptive outside of Duopross and some of the other cases that held marks like simply safe or ultimate bike rack to be laudatory or puffery. Once we move beyond that, now we start to get into words that have multiple meanings like meat candy, where you have candy either meaning actual candy. And they only found three instances of that, Your Honor. Well, actually one. They say they found three. One of them was an ice cream, a foie gras ice cream. These are niche products, to be fair. The press review said they were gross or interesting, one or the other. And the other one was a gross or interesting. Yeah, at saver.com, appendix 8. The other one was a bacon rice crispy treat, which is a cake, not a candy product. They did find the bacon peanut brittle, which we would say might be borderline candy. To answer the question, I think fair use is going to hold, because people will have the right to use terms like crack-like. One of the synonyms that the PTO brought forward was a review that said that the meat candy is crack-like. So if someone wanted to refer to their product as crack-like, and our mark had been crack-like instead, or crack-like meat, then why not let them engage in fair use and use that review? So what good would the trademark do? Well, the trademark would be on the cart itself. I mean, there's a difference between quoting a review that uses a suggestive term and when it's emblazoned on the board of a restaurant or a location. I'm not sure. So your client would have the symbol of a registered trademark, which by statute applies throughout the nation, and yet anyone selling this product can use the trademark. So they could quote a review. They couldn't call their product meat candy or call their food. More importantly, call their food. There's a difference also between a product called meat candy and a restaurant service. It would be like if Sara Lee were not a famous mark, if someone opened a Sara Lee restaurant and there were also Sara Lee baked good in the frozen food section, those are two different markets. So there is that to protect them as well. So the registration, I guess I didn't read the registration. The registration is limited to restaurant names? Yeah, it's not a food product. This is a food cart, food stall, kiosk, a mobile, one of the food trucks you see around town. I should know this, but is fair use in the statute or a gloss? I don't know the answer to that either, Your Honor. I know it exists and that you can use a mark when you're making a factual statement. Have there been instances that the scenario that I was concerned about was not somebody using a registrant's mark in commenting on the registrant's product or comparing his to the registrant's product, but quoting somebody using a registered mark simply as a descriptor of his own product. Is there an instance of that in the case law? I don't know of any, Your Honor. I see you were sharing your argument with Mr. Dolan, is that correct? Yes, he's doing the rebuttal. Okay. I would point out that a trademark, to be deemed descriptive, all meanings of that mark have to be descriptive. If any of the meanings are not descriptive, then the mark is suggestive. You have in Appelli's briefing here the multiple definitions for candy, a sweet food made with sugar or chocolate, or something that is pleasant or appealing or light in a frivolous way. We have to think about what it means when we hear the word candy. Do we smile? Are we happy? There are a lot of connotations to that word. There's eye candy, visually appealing. All of these things don't have anything to do with food. At that point, we have an incongruous mark, so we have to say it's suggestive. Okay, let's hear from Mr. Dolan. Your Honor, I'm just doing the rebuttal. Okay. I'd also say that a lot of the usages are very spartan in the record. There are a few internet websites. Most of them are titles of products. People are using it as a trademark. Which is fine. Those are common law users. Maybe they predate us. Maybe they have superior rights at some point. I don't know. We certainly were not aware of them at the time of the filing of the mark. So those prior usages, if you look at them, are all initial capitals or menu item. One of them is a menu item from a restaurant. They're fairly hard to find unless you start digging. But Plyboo says that when something is used as a trademark, it's a trademark. It doesn't say that it becomes descriptive because other people are using it as a trademark. Okay. Any questions for Ms. Lusitano? All right. Thank you. Thank you, Your Honor. Ms. Walker. Good morning. May it please the Court. This is not a closed case. The mark at issue here, or the applied for mark, is descriptive. And the evidence in the record clearly demonstrates that it is descriptive. The suggestive meaning that applicant offers in her opening brief is that, is almost a direct quote from a dictionary definition here. Applicant suggests that candy means something pleasing. That language tracks exactly one of the dictionary definitions for candy. All of the evidence of meat candy as a combined term confirms that descriptive meaning here. There is no question that this term, as it applies to these services which applicant has identified will feature delicious tasting meat, is descriptive. And I want to go back to the registration context. A registration here will give the applicant, for the first five years, prima facie evidence of the right to use and the right to bring an action. And after that five years, it's eligible for incontestable rights. So the fair use here prevents someone from using meat candy in a way that could be deemed to be a trademark use. It's not true that other uses that could be deemed to be a trademark use will be available to others. If the court has no further questions. You said that this was not a closed case, clearly descriptive. I guess I would, I'm not sure it's not a closed case. I'm not sure it's purely descriptive, in part because I'm not sure of exactly how to draw the line between the descriptive and suggestive, which is a line that I guess the law requires us to draw, even if as a linguistic matter that may not be a terribly easy. There's something playful, I would use the word fanciful if it didn't have a legal connotation. I don't think I've heard of expressions like ex-candy until somewhere late in my life. Relatively new, and there's something other than, I mean I wouldn't expect, for example, a scientist to use the term meat candy in trying to give an objective description of something. What does one do with the distinctive, I don't mean distinctive in a trademark sense, the distinctive character of this expression as a whole, not candy by itself. Right, understood, your honor, and I want to be clear that the court doesn't need to find that this is not a closed case, of course, right? The court just needs to find that the board's decision was supported by substantial evidence, even if it is a closed case, if a reasonable person could have found that the board did, the court must affirm. And in terms of the term as a whole, there is substantial evidence in the record, and I don't mean that in a legal sense, I just mean the volume of evidence. How much of that was reviewers and how much of it was establishments that wanted to sell something beyond their own? We go through the evidence in the record on pages three through five of our brief, and it's a mix. There are recipes, there are reviews, there are menu items that use the term meat candy, and there are articles, and they all are using the joint term meat candy to identify a meat product. The other thing in recognizing, this court in recognizing that suggestedness and descriptiveness is often a closed case, the court also recognized that the board has a duty to place the term in the proper context within the mark and to determine the public's perception. And here, the suggestive meaning that applicant has offered is one that is in a dictionary. It is a dictionary definition of candy. So both the dictionary definitions here and the uses of the combined term identify meat candy as descriptive of the featured item of applicant services. Unless the court has any further questions, I will sit down. I think we're okay. Thank you. Okay. Thank you, Ms. Walker. Okay, Mr. Dillon. Good morning, Your Honor. May it please the court, I'm Gregory Dillon, also on behalf of Helen Tatakis. Let me begin just quickly going back to Judge Toronto's question on fair use, and just to clarify, it is a statutory defense, and to the extent this way it's statutorily written, I don't remember it fully from memory, but whenever an individual or company uses a term not for trademark purposes, for example, but descriptive of other purposes, and in good faith, fair use would protect them. So if they want to quote a review, if they want to describe their goods, for example, companies that would actually... Is the term fair use actually in the statute? Yes. There's actually a statutory section that's actually called fair use. But the point is, for example, if some other company wanted to go out and make bacon-flavored candy that actually would be actual candy, and they wanted to say this is meat-based candy or meat candy, this would not be used necessarily as a trademark, right? It would be used to describe their goods, and they'll be perfectly safe within a statutory regime. So I don't think that really is or should be a concern. And it is fair to point out that because the trademark... If this court were to conclude that trademark here is, in fact, suggestive, then cases do say that the closer the trademark is to that line, the broader the fair use defense. So for example, a fair use defense against a fanciful mark or arbitrary mark is going to be much narrower than against a suggestive mark, precisely for that reason, because the line is actually fairly fuzzy. And yes, I think other... So again, to just draw on this question, I think yes, other companies will be able to describe their goods or quotes or reviews because they would not be using that term as a mark, which is really what confuse consumers. Now, in terms of to respond to the government's argument, it is... We disagree that it... Well, I guess we agree that it's not a close case, I think, except that we think we should prevail. The government does cite a number of items in the record and in their brief. The problem is they're exactly right. They're placed in a proper context, and the context is that most of their citations are actually too sweet. So they have bacon-flavored dessert, they have some other sort of meat-based, you know, foie gras ice cream, which, you know, I agree with my co-consultant, it's kind of weird, but be that as it may, it doesn't touch on what our client is trying to sell. It doesn't touch on actual on-first services, which is a food truck. So those are actual meat candy. And of course, in that context, it's descriptive. And that is fine, because depending on the market, depending on what you're selling, the same mark can be both descriptive or suggestive, or it can be generic versus arbitrary. So, for example, Apple, if you're talking about Macintosh Apples, that's a generic term. If you're talking about computers, it's an arbitrary term. So the fact... Or, you know, Abercrombie & Fitch goes about it as well. So if you're talking about hats, and you say Safari, that's a descriptive term, because you can... When I say Safari boots, those are not necessarily descriptive terms. That's somewhat either suggestive or arbitrary. And so the courts have drawn that line, recognizing that depending on the market, your mark can be one or the other. And so if we were talking about candy, I think we would agree that meat candy would actually be descriptive. But the point is here, when we present meat candy to a consumer, precisely because there are meat-based candies, the consumer has to actually think and imagine what exactly our client's product is that is not actually candy, that is meat. And so why is candy there? It's just to recognize that it's some other type of product. It may be a pleasing product, it may be a very good product, but a consumer doesn't immediately know what's in a box, precisely because descriptively, meat candy would actually require there to be actual candy, and that's not what we are supposing. So I think context matters, but I don't think context works for the government, I think it works for us. And so the fact that there are dictionary definitions that we set in our briefs and we rely on, again, I think works for us, because ultimately, what we are trying to get consumers to do is we're trying to get them to think through or to imagine exactly what's in the boxes were, as opposed to really describing what's there. And so with the last 30 seconds, unless the court has any further questions. Anything for Mr. Daly? No? Thank you. Okay, that concludes the argument on this case. Thank you all.